UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARCO PEREZ GARNICA,<br><br>        Petitioner,<br><br>  vs.<br><br>RON FRAKER,<br><br>        Respondent. | NO. CV-11-008-JPH<br><br>**ORDER REJECTING REPORT AND RECOMMENDATION IN PART, ADOPTING REPORT AND RECOMMENDATION IN PART, DENYING MOTION FOR EQUITABLE TOLLING AND DISMISSING PETITION** |

Before the Court, without oral argument, are a Report and Recommendation to deny Petitioner's Motion for Equitable Tolling, ECF No. 12, Petitioner's Objections titled "Motion to Object to Report and Recommendation . . .", ECF No. 20, and Petitioner's Response to the Order to Show Cause why the petition should not be dismissed as time-barred titled "Motion to Show Cause", ECF No. 21-9. Petitioner, a prisoner at the Clallam Bay Correction Center ("CBCC"), is proceeding *pro se* and *in forma pauperis;* Respondent has not been served.

Magistrate Judge Hutton recommended denying Petitioner's Motion for "equitable tolling" under 28 U.S.C. § 2244(d)(1)(B). Petitioner had conceded the limitations period began to run when his direct appeal became final. For AEDPA purposes, it began to run on December 5, 2007, ninety days after the Washington State Supreme Court denied review of his direct appeal on September 6, 2007. *See Summers v. Schriro*, 481

ORDER -- 1

F.3d 710, 717 (9th Cir. 2007).

Throughout his objections, Petitioner repeatedly references his "Motion to Show Cause," which the Court has construed as his Response to the Order to Show Cause, ECF No. 21-9. Because Petitioner is proceeding *pro se* and the issues regarding equitable tolling are intertwined with his motion for equitable tolling and the directive to show cause, the Court has considered his "Motion to Show Cause", ECF No. 21-9, in conjunction with his objections, ECF No. 20.

### PETITIONER'S OBJECTIONS

In his first objection, Petitioner asserts he "did claim denial of the AEDPA and Habeas forms in previously submitted Habeas." He then argues "(ITP [the Intensive Transitioning Program at the CBCC]) not having AEDPA or Habeas material did entitle petitioner to equitable tolling . . . ." In his third objection, Petitioner writes, "THE MAGISTRATE JUDGE STATED[,] 'PETITIONER DOES NOT STATE WHEN HE WQAS [sic] PLACED IN (IMU).'" He also objects to a statement suggesting his placement in IMU was not a state-created impediment. Next, Petitioner appears to object to the finding that he was able to file a direct appeal, asserting this was only possible because he had been appointed appellate counsel.

In his sixth objection, Petitioner asserts: (1) "The (IMU) was inadequate and meaningless and void of AEDPA and habeas material to access and properly and timely file with courts"; and (2) "contaract [sic] attorneys were denied petitioner's requests to get AEDPA and habeas materials which were out of petitioner's control and a state creadted [sic] Impidimetn [sic]." Petitioner then objects to a finding

ORDER -- 2

that a box of "important legal work" was lost between December 28, 2007, and March 25, 2008.  He appears to object to the inference that the alleged loss of this work did not make it impossible for him to file his federal habeas petition within the limitations period.  Petitioner argues this is a misstatement of the facts, claiming he "could not remember all the facts and issues because the destroyed legal work."

Petitioner asserts he "was able to file the habeas coprus [sic] because [a Custody Unit Supervisor and a Correctional Officer] allowed the law clerk to talk to petitioner due to inadequacy of (ITP)."  It is unclear when this conversation occurred.  Petitioner avers, "without this conversation with law clerk, petitioner would not have submitted any habeas petition."  He also states, "the law librarian just recemntly [sic] made a copy of the AEDPA that also made it impoosible [sic] for petitioner to file on time."

In his final objection, Petitioner asserts the Magistrate Judge misinterpreted an affidavit from a law clerk which Petitioner had previously submitted, ECF No. 7.  Petitioner asserts this affidavit did not mean he "attended the law library at the (ITP)."  Rather, Petitioner avers the law clerk "was alloed [sic] to talk to the petitioner due to no AEDPA, habeas materials, no law librarian, and no law clerk or any person trained in the law."

After review of the entire record and being fully advised, **IT IS HEREBY ORDERED:** the statement in the Report and Recommendation, ECF No. 12, at page 6, suggesting Petitioner *attended* the law library in the unit housing the Intensive Transitioning Program between December 11, 2009, and July 15, 2010, is **REJECTED as erroneous.**  Nevertheless, the

ORDER -- 3

Court finds Petitioner has failed to demonstrate extraordinary circumstances, beyond his control, which made it impossible for him to file his federal habeas petition in a timely manner. Accordingly, **IT IS HEREBY ORDERED**: the remainder of the Report and Recommendation is **ADOPTED** and the Motion for Equitable Tolling, ECF No. 4, is **DENIED.** For the following reasons, **IT IS HEREBY ORDERED"** the petition is **DISMISSED as untimely** under 28 U.S.C. § 2244(d).

## EQUITABLE TOLLING

Equitable tolling determinations are "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc) (per curiam). In *Whalem/Hunt*, the state's failure to provide access to the text of the AEDPA constituted possible grounds for equitable tolling because, according to the petitioner's allegations, the absence of a copy of the AEDPA prevented him from learning about the AEDPA's one-year deadline and therefore prevented a timely filing. *See* 233 F.3d at 1149 (Tashima, J., concurring).

It is unclear from Petitioner's submissions when he became aware of the AEDPA deadline. In his Motion Requesting to Proceed Under Equitable Tolling, Petitioner stated he believed that the deadline for filing his federal habeas petition was June 14, 2010. ECF No. 4, pg. 2. In reviewing Petitioner's objections to the Report and Recommendation that he be denied equitable tolling, the Court finds his statement, "(ITP) . . . does not have meaningful access to the courts to file a habeas corpus," is a legal conclusion, rather than a factual allegation. Furthermore, alleging a lack of "habeas corpus materials" and asserting that law books are "old" and "obsolete," is not the same as stating

ORDER -- 4

there was **NO** access to the AEDPA or habeas forms.

Petitioner asserts in his "Motion to Show Cause", ECF No. 21-9, that the law librarian only recently copied "20 pages out of 126" of AEDPA material. *Id*. pg. 3. This assertion, however, does not show Petitioner was denied access to the text of the AEDPA, particularly 28 U.S.C. § 2244, during the time period in which he was required to file his federal habeas petition.

Furthermore, the fact a law library clerk and an attorney provided Petitioner erroneous information regarding how to calculate his deadline for filing a habeas petition is not a basis for equitably tolling the limitations period. *See Miranda v. Castro*, 292 F.3d 1063, 1067-1068 (9th Cir. 2002) (holding that an attorney's miscalculation of the deadline for filing a federal habeas petition does not justify equitable tolling of the limitation period); *Frye v. Hickman,* 273 F.3d 1144, 1146 (9th Cir. 2001) ("We can conclude that miscalculation of the limitations period by [petitioner's] counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling.").

**LIMITATION PERIOD**

As stated above, Petitioner's direct appeal concluded on December 5, 2007, ninety days after the Washington State Supreme Court denied review on September 6, 2007, ECF No. 1-4, page 72. *See Summers*, 481 F.3d at 717. According to Petitioner's declaration (Exhibit A) attached to his "Motion to Show Cause", ECF No. 21, he was housed in the Intensive Management Unit ("IMU") of the Washington Corrections Center ("WCC") at that time, allegedly because he had been assaulted.

ORDER -- 5

On December 18, 2007, he was transferred to the Monroe Correctional Complex ("MCC"), and then placed in the IMU on December 19, 2007, after he was "involved in an altercation with two other inmates." ECF No. 21, Exhibit A. Petitioner remained there until his transfer back to the WCC on September 22, 2008.

The Court notes, during his confinement at the MCC/IMU, Petitioner filed his Personal Restraint Petition in state court on August 1, 2008. Because Petitioner was able to file a Personal Restraint Petition, he is not entitled to relief under 28 U.S.C. § 2244(d)(1)(B). *See Ramirez v. Yates*, 571 F.3d 993, 1000-1001 (9th Cir.2009) (relief under 28 U.S.C. § 2244(d)(1)(B) available only if impediment prevented any filing in any court). At the time he filed his Personal Restraint Petition, 239 days of the AEDPA limitations period had already expired. Petitioner makes no complaints regarding the adequacy of the law library at the MCC/IMU, or the availability of the AEDPA or habeas forms at that facility.

On March 30, 2010, the Washington State Supreme Court denied Petitioner relief on his Personal Restraint Petition. ECF No. 1-4, pg 73. *See Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001)("[I]t is the decision of the state appellate court, rather than the ministerial act of entry of the mandate, that signals the conclusion of review.") At that time, 126 days of the limitations period under 28 U.S.C. § 2244(d) remained. Therefore, Petitioner had until August 3, 2010, to file a federal habeas petition. His January 3, 2011 petition was five months late.

According to the affidavit of a law library clerk, ECF No. 7, pg.

ORDER -- 6

1, Petitioner was attending the "Intensive Transitioning Program" between December 11, 2009, and July 15, 2010. He had claimed "while trying to meet his deadline in IMU & ITP - he filed requests & grievances regarding the lack of meaningful access to the courts." ECF No. 4, pg. 3. He believed that deadline to be June 14, 2010. *Id*. pg. 2.

### REQUESTS AND GRIEVANCES

The Court has reviewed Petitioner's "Exhibit B" attached to his Petition, ECF No. 1, pgs. 49-70. He has presented only one "grievance," dated August 10, 2010. *Id*. pg. 60. This was almost two months after Petitioner believed he had to file his federal habeas petition, and a week after his actual deadline for doing so. In this grievance, Petitioner stated he had received an attorney visit on January 19, 2010, and the attorney said he would send "Information pertaining to Habeas Corpus to help/assist me in my legal preparation." Although Petitioner indicated he also sent a "request" on April 11, 2010, he did not provide a copy of this document or state its content. Contrary to Petitioner's assertion, submitting a grievance after the expiration of a deadline does not demonstrate the exercise of due diligence.

Petitioner also provided a copy of a "kite" he submitted on June 29, 2010, stating he was "having trouble with contract attorneys . . ." ECF No. 1, pg. 66. This was more than two weeks after Petitioner believed the limitations period for filing a habeas petition had expired, and he does not mention any failure to provide a habeas petition form or the relevant text of the AEDPA in the kite.

Based on his assertions, Petitioner waited almost three months,

ORDER -- 7

from January to April 2010, to follow up on his "request" of an attorney for "Information pertaining to Habeas Corpus to help/assist [him] in [his] legal preparation." ECF No. 1, pg. 60. Notations appearing on a letter dated January 5, 2010, indicated "habeas papers" was only one of many of Petitioner's requests for legal information, ranging from divorce to "INS to Mexico." ECF No. 1, pg. 59.

While equitable tolling is applicable in an appropriate case, *Holland v. Florida*, 560 U.S. ___, 130 S.Ct. 2549 (2010), Petitioner has not presented such a case. To the extent Petitioner asserts contract attorneys created an "impediment" and "extraordinary circumstances" that kept him from filing a timely habeas petition, he presents no facts showing these attorneys were retained by him to file a habeas petition. In any event, attorney negligence such as missing a filing deadline does not warrant equitable tolling. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Petitioner has failed to demonstrate diligence in the preparation of a federal habeas petition prior to the expiration of the limitations period. Indeed, Petitioner's assertion in his Objections that, but for a conversation he had with a law clerk on an unspecified date, he would not have submitted any habeas petition, does not demonstrate an exercise of due diligence warranting equitable tolling.

### LOSS OF LEGAL FILES

Petitioner also asks the Court to consider the fact a box containing his legal file was destroyed by CBCC. Petitioner asserts in his declaration, ECF No. 21, Ex. D, that he was notified of a box of property at the CBCC on December 28, 2007. He indicates he attempted to

ORDER -- 8

have it sent to him on January 20, 2008, but apparently did not have sufficient funds. He made a second attempt on January 28, 2009, and sought "an extension on box" on February 15, 2008. *Id.* Petitioner states he received a letter that his box was destroyed on November 5, 2008. Petitioner does not state what steps he took to secure the box between February and November 2008.

Petitioner asserts he also learned on April 9, 2008, that a legal file in another property box had been mixed up with the property of a former cell mate, and was sent with that person to "ICE for deportation." ECF No. 21, Ex. E. Regardless, the Court notes once again that Petitioner filed a Personal Restraint Petition in state court on August 1, 2008. Therefore, any loss of legal work in 2008 would not have prevented Petitioner from meeting a deadline to file a federal habeas petition two years later.

Petitioner asserts "more pages of [his] legal file" were destroyed when the sprinkler system at the WSP was accidently turned on in January 2009. ECF No. 21, Ex. F. Again, Petitioner presents no facts showing the loss of his legal work in January 2009, actually prevented him from timely filing his federal habeas petition in August 2010.

**TRANSFERS**

Petitioner lists numerous transfers in his declaration. ECF No. 21, Ex. A. He indicates his placement in the IMU at various facilities was due to him either perpetrating an assault on others, or being assaulted. While housed at the Washington State Penitentiary ("WSP") on November 20, 2008, he states he requested to return to the IMU "to severe [sic] ties with all involvements with the prison system stg

ORDER -- 9

groups." The court assumes "stg" means "Security Threat Group." Based on these "involvements," Petitioner's assertion of a "state imposed pediment" is not well taken.

Petitioner indicates he was transferred to the WCC on February 18, 2009, and then to the Clallam Bay Correction Center ("CBCC") on February 24, 2009. He states he was released from the CBCC/IMU on March 5, 2009, and assaulted on March 6, 2009, requiring stitches. He does not clearly state whether he was again placed in the CBCC/IMU following the assault on March 6, 2009, and if so, for how long. Although Petitioner indicates he was interviewed for the Intensive Transitioning Program, he does not state when this occurred. We know from prior submissions that Petitioner participated in the Intensive Transitioning Program between December 11, 2009, and July 15, 2010. ECF No. 7, pg. 1.

Once again, Petitioner was able to file his Personal Restraint Petition on August 1, 2008, while housed in the MCC/IMU between December 19, 2007, and September 22, 2008. Taken as a whole, Petitioner's assertions have failed to demonstrate either that these alleged impediments made it impossible for him to file a timely federal habeas petition, or that he diligently pursued his rights. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005). Accordingly, **IT IS HEREBY ORDERED**: the Petition is **DISMISSED with prejudice** as untimely under 28 U.S.C. § 2244(d).

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order, enter judgment, and forward a copy to Petitioner. The Court further certifies that pursuant to 28 U.S.C. § 1915(a)(3), an

ORDER -- 10

appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

**DATED** this ___27th___ day of May 2011.


                              S/ Edward F. Shea
                              EDWARD F. SHEA
                       UNITED STATES DISTRICT JUDGE

Q:\Civil\2011\11cv008jph-5-26-dis2244.wpd

ORDER -- 11